liKNOLL, Judge.
Defendant was convicted of possession of cocaine, a violation of La.R.S. 40:967(C), and sentenced to thirty (30) months at hard labor. He filed four assignments of error: (1) that no rational trier of fact, viewing the evidence in a fight most favorable to the prosecution, could have found defendant guilty beyond a reasonable doubt, (2) that the district court wrongfully deviated from the sentencing guidelines, and (3) the sentence of the district court is unconstitutionally excessive and grossly out of proportion with the severity of his crime.[1] We affirm.
I gFACTS
During the early morning hours of October 18, 1992, Officer James White of the St. Landry Parish Sheriffs Department conducted surveillance of Club Lexxus in Grand Coteau, Louisiana. He noticed unusual activity centered around a blue 1978 Oldsmobile in the parking lot. The Oldsmobile was driven to Club Lexxus by defendant, Joseph Dale Brooks, Jr. Officer White testified that there were several people standing around the Oldsmobile. Officer White observed that cars that were circling the parking lot would stop in front of the Oldsmobile, and that individuals from the group around the Oldsmobile would approach the stopped cars from the driver’s side. Officer White testified that these individuals would then return to the Oldsmobile, open the door and appear to retrieve something from underneath the driver’s seat. Then these individuals would again approach the stopped ear, and the stopped car would then drive off.
Officer White watched these individuals come and go from the Oldsmobile for a 45 minute period. He noted that only three individuals approached the stopped cars, and that only one of them approached any given stopped car at a time. He was able to distinguish these individuals from the other people around the Oldsmobile because of the distinctive sports logos on the caps and coats that they were wearing.
*762 Although he did not actually witness an exchange, Officer White suspected that the three individuals were selling drugs from the Oldsmobile. He called Officer Willis Thomas, who was working a security detail at Club Lexxus that night, for assistance in investigating the three individuals. Officer White followed the defendant, Joseph Dale Brooks, Jr., into Club Lexxus, and asked him to come outside. The officers also confronted the two other individuals seen by Officer White. TheseJjindividuals were John T.C. Barriere, Jr. and Julius Aristille Lewis. Their nicknames are “Dice” and “Poosa,” respectively.
Once outside, the three were handcuffed and searched. The search did not reveal any contraband or weapons. Officer White then requested permission to search the Oldsmobile, but he was told that the Oldsmobile was owned by defendant’s father, who was informed of the situation and on his way to Club Lexxus. The father of the defendant arrived and granted permission to search the Oldsmobile. A vial containing two pieces of what was later determined to be cocaine was found underneath the driver’s seat.
After his arrest, the defendant gave the following statement. It was in his own handwriting and signed by the defendant.
At 7:30 I was taking a bath my friends Chris and Posa came to my house wanting to go to the game and Club Lexxus so we went to the game and stop back at the Chevron Station to buy liquor to drink when some boy came to my car wanting some drugs so went to the club and was on the outside of the club and my friend Posa say here Chris and I say I am going in the club he say Dale I am put this under the drive seat of the ear lets go in club and this was it.
We note that Dice is also known to defendant as “Chris.”
Defendant was charged by bill of information with possession of a Schedule II controlled substance in violation of La.R.S. 40:967(C). He entered a plea of not guilty to the charge. After a one day trial on November 29, 1994, the jury found defendant guilty of possession of cocaine. On February 24, 1995, defendant was sentenced to thirty (30) months at hard labor. On March 8, 1995, defendant filed a Motion to Reconsider Sentence through appointed counsel which was denied that same day. Then on March 23, 1995, defendant again filed a Motion to Reconsider Sentence through retained counsel. This motion was also denied. Nevertheless, on July 24, 1995, the trial court noted in a per curiam opinion that it had made an Uunintended deviation from the sentencing guidelines. The trial court amended defendant’s sentence, suspending all but five (5) months. Further, the court imposed twenty (20) months supervised probation under all conditions of La.Code Crim.P. art. 895 with the special conditions that defendant pay $20.00 per month and submit to random drug screening.
SUFFICIENCY OF EVIDENCE
In his first assignment of error, the defendant argues that there was insufficient evidence to prove beyond a reasonable doubt that he intended to possess cocaine in violation of La.R.S. 40:967(C). Specifically, he claims that there was insufficient evidence showing that he had constructive possession of the cocaine.
To convict a defendant for possession of cocaine pursuant to La.R.S. 40:967(0, the state must prove beyond a reasonable doubt that the defendant knowingly or intentionally possessed a controlled dangerous substance classified in Schedule II of La.R.S. 40:964. Determination of whether there is possession sufficient to convict depends on the peculiar facts of each case. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Cann, 319 So.2d 396 (La.1975).
In State v. Cormier, 94—537 (La.App. 3 Cir. 11/2/94), 649 So.2d 528, this court noted the ■distinction between actual possession and constructive possession.
Possession of illegal drugs can be in the form of actual possession, if the contraband is found on the defendant’s person, or constructive possession, if the circumstances show that the contraband is subject to the defendant’s dominion and control. State v. Trahan, 425 So.2d 1222 (La. *763 1983); State v. Williams, 608 So.2d 266 (La.App. 3d Cir.1992).
Cormier, 649 So.2d at 531.
|5 It is well established that the mere presence of someone in the area where illegal drugs are found, or the mere association with the person found to be in possession of the contraband, is insufficient to establish constructive possession. State v. Harris, 94-0970 (La. 12/8/94), 647 So.2d 337. Rather, to establish constructive possession, the illegal drugs must be within the defendant’s dominion and control. Several factors to be considered in establishing dominion and control are:
defendant’s knowledge that illegal drugs are in the area; the defendant’s relationship with the person found to be in actual possession; the defendant’s access to the area where the drugs were found; the evidence of recent drug use by the defendant; the defendant’s physical proximity to the drugs; and any evidence that the particular area was frequented by drug users.
Cormier, 649 So.2d at 531.
Guilty knowledge is an essential element of the crime of possession of drug contraband and such knowledge or intent may be inferred from circumstantial evidence. Cormier, 649 So.2d 528; State v. Edwards, 354 So.2d 1322 (La.1978); State v. Mims, 330 So.2d 905 (La.1976).
Several witnesses, including the defendant himself, testified on the defendant’s behalf. The defendant’s sister, Kayla Marie Brooks (Kayla), testified that she was with the defendant’s wife, Vanessa Brooks (Vanessa), that night, and that they arrived at Club Lexxus prior to defendant’s arrest. When she arrived, she saw 50 to 60 people standing around her brother’s car. She stated that she saw Dice and Poosa at the window of a truck that had pulled into the parking lot. She stated that they were at the window of the truck for a few minutes after which the truck left. She said that they were both wearing Raiders jackets and she said that she saw one of them lean through the open window of her brother’s car and put something under the driver’s | (¡seat. She did not see her brother at this time, and she did not know whether it was Dice or Poosa who reached inside the ear. She entered the club and saw her brother at the bar. When she saw Officers White and Thomas take the defendant outside, she followed them outside and then went back inside to call her father. She informed Officer White that he could not search the Oldsmobile since it was owned by her father and that he was on his way. After her father arrived and consented to the search, she saw Officer Thomas retrieve a small vial from underneath the driver’s seat. Officer Thomas did not say what was inside the vial.
On cross-examination, Kayla admitted that since the door to the Oldsmobile was closed, she could not tell if she saw Dice or Poosa put something under the seat. She said that she had imagined that they had reached under the seat. On redirect, she said that after the defendant, Dice, and Poosa were handcuffed, Dice told her to “go get it under the seat” and that she said “not me.”
Next, the defendant’s wife, Vanessa Brooks, testified. Her testimony paralleled Kayla’s. She confirmed that Dice and Poosa were at the window of a stopped truck when she arrived. She said that she saw Dice lean into the Oldsmobile. She stated that there were 20 or 30 people around the Oldsmobile and that she told them to get away from the car because the windows were down. After the defendant, Dice, and Poosa were handcuffed, she said Dice told Kayla to get something from the driver’s seat of the car and Kayla refused.
The defendant testified in his defense. He stated that he had gone to a football game with Dice and Poosa, after which they stopped at a Chevron station to buy a twelve-pack of beer. While they were at the Chevron Station, a man approached them wanting to buy drugs. Dice told the man that they did not have any drugs and the man left. They then went to Club Lexxus, and defendant backed his car into a Rspace. Defendant stood by his car for a few minutes and rolled down his windows so the people outside could listen to his radio. He stated that there were about ten people around his car. Defendant was wearing a “loud orange” Miami Hurricanes jacket and Dice and Poosa *764 were wearing Raiders jackets. He stated that no one had a jacket like his in the parking lot.
The defendant denied approaching any cars in the lot. He stated that he asked Dice to watch his car while he went inside the club. He said that as he was walking into the club, Dice was going to go inside with him, but Dice stopped and said, “I’m going to put it under the seat.” Defendant stated that he thought Dice was referring to the twelve-pack of beer. Defendant said that he did not know whether Dice was carrying drugs or not.
The defendant said that he was inside for about 15 minutes, when he decided to go outside to start his car to charge the battery. As he was leaving, he saw his wife and sister entering the club. He turned around and went with them to the bar, whereupon he was confronted by Officer White. He said that after they were handcuffed, Dice told him something was under the seat, but that he had no idea what Dice was talking about. He stated that he never knew that there were drugs in his car.
On cross-examination, defendant admitted that Dice could not have been talking about the twelve-pack when he said that he was going to put something under the seat, since the twelve-pack was too large to fit under the seat.
The State called John T.C. Barriere, Jr. (Dice) and Julius Aristille Lewis (Poosa) to rebut the defendant’s testimony. Dice denied being approached by a man at the Chevron station. He said that he never had any drugs that evening and that he did not put anything under the driver’s seat of the Oldsmobile. He denied telling defendant that he was going to put something in the Oldsmobile, and he said that hejgdid not tell defendant or Kayla anything about drugs in the Oldsmobile. He did admit that a man in a green truck pulled up in front of the Oldsmobile and tried to sell him some jewelry, but he stated that he did not buy any. He stated that although he and Poosa approached the truck, none of them approached any ears that night.
Poosa’s testimony was roughly the same as Dice’s. He denied seeing the man at the Chevron station. He denied having any drugs, and he said that he did not put anything under the seat of the Oldsmobile. He also said that he did not hear Dice tell Kayla to get anything out of the car. On cross-examination he admitted that he had looked at some gold chains offered for sale by a man in a green truck. He stated that after the truck pulled away, a security guard at the club asked him to turn down the radio in the Oldsmobile. He went to the Oldsmobile, leaned into the window, and turned down the radio.
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex. rel Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982); State v. Moody, 393 So.2d 1212 (La. 1981). When there is conflicting testimony it is the mandate of the fact finder to make the determination of credibility. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781. Therefore, this court should not second-guess the credibility determinations of the fact finder beyond the Jackson sufficiency evaluation. State v. Richardson, 425 So.2d 1228 (La.1983).
|9The crucial inquiry in the case sub judice is whether the defendant had the “guilty knowledge” required for conviction of a possession offense. There was conflicting testimony on this issue. The defendant contends that he had no knowledge of drugs either in his car or in the possession of his companions. The testimony taken on his behalf suggests that one of his companions may have placed the cocaine in his car without his knowledge. The testimony of Dice and Poo-sa rebuts this, however. Additionally, Offi *765 cer White described a pattern of activity in which individuals from the Oldsmobile would approach a stopped car and then return to the Oldsmobile. He stated that these individuals reached under the driver’s seat before returning to the stopped vehicles. He further stated that he was absolutely certain that defendant was one of the people engaging in this activity. Furthermore, the defendant’s own statement indicates that he knew that there was something being placed in his car.
Guilty knowledge can be proved by circumstantial evidence. State v. Edwards, 354 So.2d 1322 (La.1978). When the state uses circumstantial evidence to prove an element of a crime, it must exclude every reasonable hypothesis of innocence in order to convict. La.R.S. 15:438. However, when reviewing the sufficiency of circumstantial evidence used by the state to prove an element of a crime, a stricter standard than that contained in Jackson, is not required. State v. Wright, 445 So.2d 1198 (La.1984). Rather, the reviewing court simply evaluates the circumstantial evidence in the light most favorable to the prosecution and determines if any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Jacobs, 504 So.2d 817, 821 n. 6 (La.1987); State v. Fisher, 628 So.2d 1136 (La.App. 1 Cir.1993), writs denied, 94-226 and 94-321 (La. 5/20/94), 637 So.2d 474 and 637 So.2d 476.
| ipAlthough the defendant introduced testimony that suggested an alternate hypothesis, that testimony was directly contradicted by the testimony of Dice and Poosa. The determination of credibility made by the jury is reasonable. Therefore, after reviewing the all of the evidence in a light most favorable to the prosecution, we conclude that the evidence adduced is sufficient for any rational juror to find the defendant guilty of possession of cocaine beyond a reasonable doubt.
SENTENCE
We note that the last two assignments of error (2 & 3) were addressed in a per curiam opinion of the trial court. In its per curiam, the trial court modified its sentence to provide that all but five (5) months of the sentence be suspended. In addition, defendant was placed on twenty (20) months supervised probation. The amended sentence is in conformity with the sentencing guidelines. The amendment of the defendant’s sentence makes these assignments of error moot.
ERRORS PATENT
We have reviewed the record for errors discoverable by a mere inspection of the pleadings and proceedings in accordance with La.Code Crim.P. art. 920. We have discovered no errors patent on the face of the record.
In conclusion, we find that viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt of possession of cocaine in violation of La.R.S. 40:967(C). Accordingly, the conviction and sentence of the defendant is affirmed.
AFFIRMED.
THIBODEAUX, J., dissents with reasons.

. Defendant also assigned as error ineffective assistance of counsel. Defendant did not brief this assignment and, therefore, it is considered abandoned. Uniform Rules-Courts of Appeal Rule 2-12.4; State v. Dewey, 408 So.2d 1255 (La. 1982).