STATE OF LOUISIANA * NO. 2025-KA-0388

VERSUS *

COURT OF APPEAL

SHONNON ESTEEN *

FOURTH CIRCUIT

*

STATE OF LOUISIANA

* * * * * * *


APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 552-645, SECTION "A"
Honorable Simone A. Levine
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase, Judge Monique G. Morial)

**LOBRANO, J., CONCURS IN THE RESULT**

Jason Rogers Williams
DISTRICT ATTORNEY
Brad Scott
CHIEF OF APPEALS
Peter James Vesich
ASSISTANT DISTRICT ATTORNEY
District Attorney Orleans Parish
619 South White Street
New Orleans, LA 70119


            COUNSEL FOR PLAINTIFF/APPELLEE



James Alan Williams
LAW OFFICE OF JAMES A. WILLIAMS
706 Derbigny Street
Gretna, LA 70053


            COUNSEL FOR DEFENDANT/APPELLANT


                    **SENTENCES AND CONVICTIONS AFFIRMED**
                           **MARCH 25, 2026**

*TGC*
*MGM*

Shonnon Esteen (hereinafter "Defendant") appeals his sentences and convictions for two counts of second-degree rape and sexual battery. After consideration of the record before this Court and the applicable law, we affirm Defendant's sentences and convictions.

## Procedural History

On April 29, 2020, two sisters, Victim 1 and Victim 2[1], reported to the police that they had been sexually assaulted by Defendant, their uncle, when they were minors. The victims and their cousins often spent time at their grandparents' house, sleeping there frequently on the weekends. The alleged sexual assaults occurred between July 2006 and December 2010. During that period, Defendant resided at his parents' home, which is also the residence of the victims' grandparents.

After an investigation, Defendant was charged by bill of indictment with two counts of aggravated rape pursuant to La. R.S. 14:42, and two counts of sexual battery pursuant to La. R.S. 14:43.1. Defendant was arraigned and pled not guilty to all four counts.

---

[1] In accordance with La. R.S. 46:1844(W)(1)(a), to keep confidential the identity of persons who were minors at the time of the offense, the word Victim or initials have been used in place of their names.

On March 12, 2022, the State and defense counsel agreed to a trial date of June 21, 2022. Eight days before trial, Defendant filed a motion to continue the trial date noting that his attorney had a trial set in another court. On June 21, 2022, the morning of trial, the district court denied Defendant's motion to continue, noting that the trial date was jointly chosen to accommodate out-of-town witnesses. After two days of testimony, the jury unanimously found Defendant guilty of two counts of second-degree rape and guilty as charged on both counts of sexual battery of both victims.

The district court sentenced Defendant to forty years imprisonment at hard labor on both counts of second-degree rape and sixty years imprisonment, at hard labor on both counts of sexual battery – all counts to run concurrently.[2] This appeal followed.

**Relevant Trial Testimony**

*Victim 1*

Victim 1 testified that she was sexually assaulted from July 7, 2006 until December 31, 2009, when she was between the ages of six and ten years old. She testified that she often slept at her grandparents' house, where Defendant was living. Victim 1 recounted an incident that occurred when Defendant entered the room while she was playing on her grandparents' computer. Defendant said that he had to use the computer and instructed Victim 1 to sit on his lap. When she obliged, he told her that they were about to play a game and not to tell anyone. During this portion of her testimony, Victim 1 vividly described a sexual assault. She stated that this was the first time Defendant sexually assaulted her.

---

[2] Defendant filed a motion for new trial which was denied by the district court.

Victim 1 described another incident where she was in Defendant's bedroom watching television, lying in bed with Defendant, his infant daughter and his wife. Defendant was positioned in the bed between Victim 1 and his family, who were asleep. According to Victim 1's testimony, Defendant raped her. After he ejaculated, Defendant told her to clean herself up and to not tell anyone what had happened.

Victim 1 explained that she did not tell anyone about the incidents until 2017, when she told her aunt. Several years later, Victim 1's aunt told Victim 1's mother. Upon finding out, Victim 1's mother convinced her to go to the police. She did so with three of her sisters and a cousin.

*Victim 2*

Victim 2 testified that she was sexually assaulted from July 1, 2008 until December 31, 2010, when she was between the ages of six and nine years old. She explained that Defendant lived at her grandparents' house part of the time and that she and her family members would often spend the night there. Victim 2 recounted several sexual assaults by Defendant. She described a time where Defendant touched her inappropriately while she was in the computer room playing on the computer. He told her not to tell anyone what happened. Victim 2 testified that the first time this happened, she was in elementary school.

Victim 2 testified about several specific incidents of sexual assault. One instance occurred when she and Defendant were driving alone in a car and she was in the back seat. She described the incident, explaining that Defendant reached his hand towards the back seat and digitally penetrated her. Another time, when Victim 2 was brushing Defendant's hair, he touched her vagina. Victim 2 also testified that in one instance, during a game of hide and seek, she and Defendant

4

were hiding under a bed and Defendant raped her. She stated that she did not tell anyone for years about the sexual assaults until a friend urged her to report the incidents.

*SE*

SE is the cousin of Victim 1 and Victim 2. She testified that she was sexually assaulted by Defendant in 2008, when she was eleven years old. Like Victim 1 and Victim 2, she stated that she spent many nights at her grandparents' house. SE recalled one night when she was sleeping in the downstairs bedroom with Victim 1, Victim 2, and their sister, Defendant entered the room around 3:18 am. He proceeded to grab her, waking her up, and the two had a brief conversation. When she turned back around to go back to sleep, she stated that Defendant stuck his hand under the covers and digitally penetrated her. She explained that everyone else in the room was asleep and that he made a gesture to her to be quiet. He then attempted to move her and she resisted, broke free, and woke her cousin who escorted her upstairs to her grandparents' bedroom. SE told her grandparents that Defendant had touched her inappropriately. They all went downstairs to confront Defendant, who had returned to his room. In response, Defendant insinuated that she was dreaming.

The following morning, SE's mother picked her up and took her to the police station to file a police report. A forensic report was also completed. She testified that her mother did not allow her to go back to the house until Defendant had moved away.

*Detective Kevin Richardson*

Detective Kevin Richardson (hereinafter "Det. Richardson") testified that he worked in the New Orleans Police Department's (hereinafter "NOPD") sex crimes

unit. He stated that he interviewed Victim 1 and Victim 2, separately by telephone. In these recorded conversations, Det. Richardson learned that Defendant was the victims' uncle. Following the phone conversations, he obtained an arrest warrant and attempted to locate Defendant.

Det. Richardson noted that there were no DNA swabs taken from the victims, no photos, nor was there any attempt to collect any cellular communications because the investigation was not conducted for a number of years after the sexual assaults. Due to the facts surrounding these cases, he stated that it would be highly unlikely that any surveillance of the house would reveal any probative evidence. Det. Richardson explained that many sexual assaults are either never reported or the reporting is delayed.

### Captain Bruce Haney

Captain Bruce Haney (hereinafter "Capt. Haney") was a 23-year veteran of the NOPD. Capt. Haney was a child abuse investigator in 2008 when SE, escorted by her mother, came to his office to report the incident between SE and Defendant. He stated that SE reported the incident within 48 to 72 hours of the sexual assault. Capt. Haney also testified that although a medical examination was conducted, it revealed no DNA belonging to Defendant on SE. However, Capt. Haney pointed out that the allegations were of touching on top of the clothing and no penetration; therefore, the absence of DNA was explainable.

### Ahna Patterson

In 2008, Ahna Patterson (hereinafter "Ms. Patterson") was employed as a forensic interviewer at the New Orleans Children's Advocacy Center. Ms. Patterson explained the New Orleans Children's Advocacy Center provides services to children who have experienced abuse or neglect. She explained that in a

forensic interview, her questions are designed to elicit additional information from a child regarding his/her allegations. In October of 2008, Ms. Patterson conducted a forensic interview of SE. Ms. Patterson used anatomically accurate drawings of a male and female to help SE identify where Defendant touched her. Ms. Patterson testified that SE indicated that Defendant touched her on "her private spot," referring to her vagina, and marked it on the female anatomically correct drawing. The State played the forensic interview for the jury.

### Dr. Adrienne Atzemis

Dr. Adrienne Atzemis (hereinafter "Dr. Atzemis"), a child abuse pediatrician, testified that in 2008, she was the Medical Director of the Audrey Hepburn Care Center. She conducted a comprehensive medical evaluation of SE and testified that SE made a disclosure of one episode of digital genital contact. After a full exam, she found no evidence of injury. Dr. Atzemis testified that she expected SE to have a normal medical exam because the contact disclosed was touching which does not normally leave marks or scars. She noted that it was standard practice not to screen for "touch DNA" if there was no allegation of secretion of semen or saliva.

### Defendant

Defendant testified that the allegations made by SE were false and fabricated because of an incident which occurred at his parents' house. He explained that earlier that evening, he whipped SE with a belt after she talked back to him. He stated that he never entered the room on the night that SE alleged that he inappropriately touched her. Rather, he maintained that his actions that night were contrary to SE's testimony. He testified that he returned home, entering the house

7

through the back door, informed his parents that he was home, and went into the kitchen to get a snack. Defendant maintained that he then went to his room.

Defendant also denied the allegations that he raped Victim 2. He identified a photograph of the bed where Victim 2 alleged the rape occurred. He stated that he was, at the time, approximately 270 pounds and six feet tall and that he could not have fit under the bed. He denied playing on the computer with the victims, explaining that he had his own laptop and PlayStation in his room. He maintained that he had no need to go into the computer room when the children were in there. Defendant testified that the children would never be allowed to sit on his lap because his mother did not allow that type of behavior. He denied that the incident with Victim 1, which allegedly occurred in the bed with his wife and child, ever happened. Defendant also stated that his nieces were "performers" and their allegations stemmed from jealousy that he was living "better" than the rest of the family.

### Assignments of Error

Defendant asserts three assignments of error:

1. The trial court erred in denying [Defendant's] motion for continuance;

2. [Defendant's] Sixth Amendment right to the effective assistance of counsel was violated; and

3. The evidence presented at trial was insufficient to support the jury's verdict on any count.

### Discussion

As a threshold matter, we will first conduct our statutory errors patent review, after which we will discuss Defendant's assignments of error.

8

***Errors Patent Review***

In accordance with La. C.Cr.P. art. 920, this Court reviews all criminal appeals for errors patent on the face of the record. An error patent is one "that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of evidence." La. C.Cr.P. art. 920(2). Our review of the record reveals two errors.

In sentencing Defendant, the district court failed to specify his sentences for second-degree rape and sexual battery were to be served without the benefit of probation, parole or suspension of sentence as required by statute. *See* La. R.S. 14:42.1; 14:43.1.[3] However, La. R.S. 15:301.1(A) provides that when the sentencing court fails to specifically impose the statutorily mandated restrictions, the sentence "shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence" and "shall not in any way affect the statutory requirement that all or a portion of the sentence be served without" these benefits. *See State v. Williams,* 2000-1725, p. 10 (La. 11/28/01), 800 So.2d 790, 799 (La. R.S. 15:301.1(A) "self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute."). *See also State v. Dixon,* 2025-0105 (La.App. 4 Cir. 12/10/25), ___So.3d___, 2025 WL 3540914. Accordingly, this error does not warrant action by this Court.

The second error patent addresses the responsive verdicts the jury returned on both counts of rape. The indictment charged Defendant with aggravated rape in

---

[3] The State raised this omission at sentencing and the district court noted that it need not specify this prohibition because "the sentencing speaks for itself."

9

violation of La. R.S. 14:42. At the time the crimes were committed, from 2006 to 2010, one of the responsive verdicts to aggravated rape was forcible rape, a violation of La. R.S. 14:42.1. However, at the time of trial, La. R.S. 14:42 had been amended and renamed as first-degree rape, and the responsive verdict under La. R.S. 14:42.1 was amended from forcible rape to second-degree rape. During trial, the district court, the State and defense counsel referred to the charged offense as first-degree rape. Additionally, the verdict form provided to the jury listed first and second-degree rape, not aggravated and forcible rape. The jury returned a responsive verdict of second-degree rape, a violation of La. R.S. 14:42.1. Thus, even though the jury technically returned a verdict for an offense that did not exist at the time of the commission of the crimes, La. R.S. 14:42(E) explains: "any reference to the crime of aggravated rape is the same as a reference to the crime of first-degree rape." Additionally, La. R.S. 14:42.1(C) explains: "any reference to the crime of forcible rape is the same as a reference to the crime of second-degree rape." This error is harmless and warrants no action by this Court.

### *Sufficiency of Evidence- Assignment of Error Number Three*

Defendant's third assignment of error is that the State failed to present sufficient evidence to support his convictions. It is well settled that when sufficiency of the evidence, and one or more trial errors, are raised on appeal, this Court should first determine the sufficiency of the evidence. *State v. Groves*, 2020-0450, p. 21 (La.App. 4 Cir. 6/10/21), 323 So.3d 957, 971 (quoting *State v. Hearold*, 603 So.2d 731, 734 (La. 1992)). We review sufficiency of the evidence first because "if there is not sufficient evidence to support a conviction, an accused is not entitled to a new trial; rather, an accused is entitled to an acquittal. If an

10

accused is entitled to an acquittal, this prevents the need for a retrial." *Groves*, 2020-0450, p. 21, 323 So.3d at 971 (citation omitted).

This Court has previously set forth the applicable standard of review for sufficiency of the evidence:

> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Green*, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall*, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall*; *Green*; *supra*. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So.2d 1319 (La. 1992) at 1324.

*State v. Huckabay*, 2000-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111 (citation omitted).

Pursuant to *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this Court must determine that the evidence, viewed in the light most favorable to the prosecution, "was sufficient to convince a rational trier of fact that all the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 2000-0674, p. 9 (La. 6/29/01), 796 So.2d 649, 657 (quoting *State v. Captville*, 448 So.2d 676, 678 (La. 1984)). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. The statutory test of La. R.S. 15:438 "works with the *Jackson* constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to

prove guilt beyond a reasonable doubt to a rational jury." *Neal*, 2000-0674, p. 9, 796 So.2d at 657 (citation omitted). "When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience." *State v. Brown*, 2012-0626, p. 7 (La.App. 4 Cir. 4/10/13), 115 So.3d 564, 571 (citation omitted). "Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness's testimony, if believed by the fact finder, is sufficient to support a factual conclusion." *State v. Bowie*, 2024-0700, p. 13 (La.App. 4 Cir. 7/1/25), 424 So.3d 87, 96, *writ denied*, 2025-00959 (La. 12/9/25), 422 So.3d 300 (quoting *State v. De Gruy*, 2016-0891, p. 11 (La.App. 4 Cir. 4/5/17), 215 So.3d 723, 729.) "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *Huckabay*, 2000-1082, p. 32, 809 So.2d at 1111 (quoting *State v. Smith,* 600 So.2d 1319, 1324 (La. 1992)). As an appellate court we must review the record as a whole, just as the trier of fact would do. *State v. Wilson*, 2022-0346, p. 4 (La.App. 4 Cir. 12/9/22), 353 So.3d 389, 393) (citation omitted).

The State charged Defendant with two counts of aggravated rape and two counts of sexual battery. At the time of the offenses, La. R.S. 14:41 defined rape as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La. R.S. 14:42 defined aggravated rape in pertinent part as "a rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances . . . (4) When the victim is under the age of thirteen years." The jury returned

12

responsive verdicts of second-degree rape. At the time Defendant was charged, La. R.S. 14:42.1 provided that a forcible rape occurred where the rape is deemed to be without lawful consent of the victim because the victim was prevented from resisting, by force or threats of physical violence; where the victim reasonably believed that resistance would not prevent the rape; or where victim was incapable of resisting due to the involuntary administering of a drug by the offender. Whether or not the facts of this case support verdicts of second-degree or forcible rape is immaterial, as this Court may affirm the convictions if the evidence supports the crimes charged, and the defendant fails to object to the instruction on the lesser responsive offense. *See State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La. 1982); *State v. Fruge*, 2023-0552 (La.App. 4 Cir 4/11/25), ___ So.3d ___, 2025 WL 1088089, *writ denied*, 2025-00623 (La. 1/21/26), 424 So.3d 1097; *State v. Alverez*, 2013-1652 (La.App. 4 Cir. 12/23/14), 158 So.3d 142.

Both victims testified that Defendant raped them. Victim 1 testified that Defendant penetrated her vagina with his penis from behind when they were lying on the bed while watching television in the same bed, while his wife and infant daughter slept. Victim 2 testified that she and Defendant were under his bed when he anally raped her. Both victims were under thirteen years of age at the time of the rapes. Their testimony established sufficient evidence that Defendant committed aggravated rape of each of them. *See, e.g., State v. Rives*, 407 So.2d 1195, 1197 (La. 1981) (the testimony of the victim was sufficient to establish sexual intercourse despite the absence of scientific evidence); *State v. Summers*, 2010-0341, p. 7 (La.App. 4 Cir. 12/1/10), 52 So.3d 951, 955 ("The testimony of the victim alone is sufficient to establish the elements of the offense.").

Defendant was also convicted of sexual battery, which La. R.S. 14:43.1 defined in pertinent part at the time of the offenses as "the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender: (1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any body part of the offender."[4] Victim 1 and Victim 2 testified that Defendant touched their genitals while seated on his lap in the computer room. In addition, Victim 2 testified that Defendant touched her genitals while they were in a car and while she was braiding his hair. Both victims were under fifteen years old at the time of the incidents and Defendant was more than three years older than the victims.[5]

However, Defendant maintains that the evidence did not support his convictions because the victims' accounts of the incidents were not credible. He argues that the only evidence of the incidents were the victims' testimony, which the State did not corroborate with any other evidence. He asserts that Victim 1 and Victim 2 were only "parroting" the accusations made against him by their cousin, SE, years earlier. Lastly, he contends that a photograph he presented of the bed under which SE alleged he raped her, showed that the bed was so low that he could not have fit under it. Defendant submits that Victim 2's testimony that the bed sat so high that the she needed a stepstool was also unbelievable.

This Court's role is not to assess the credibility of witnesses or re-weigh the evidence submitted at trial. *See State v. Brown*, 2016-0965, p. 28 (La.App. 4 Cir.

---

[4] La. R.S. 14:43.1 was restructured by Acts 2011, No. 67.

[5] The appellant testified that he graduated from high school in 2007, a year after the first date alleged in the indictment. The victims were born in 1999 and 2001.

5/3/17), 219 So.3d 518, 536 (concluding that "[t]he credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact.") (citation omitted). Credibility determinations are matters of weight, not sufficiency, and does not cause the evidence to be insufficient to convict. *State v. Woods*, 2000-2712, p. 6 (La.App. 4 Cir. 5/29/02), 828 So.2d 6, 10 (citation omitted). While we recognize that conflicting testimony exists, we find the testimony was sufficient to support Defendant's convictions. A jury heard the testimony of the witnesses and found Defendant guilty as charged. The testimony of a single witness, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Campbell*, 2015-0017, p. 8 (La.App. 4 Cir. 6/24/15), 171 So.3d 1176, 1182 (citation omitted).

Despite the defense's attempts to cast aspersions on the victims' lives after they became adults, the jury obviously found credible their testimony that Defendant raped and fondled them when they were children. This Court will not disturb the jury's rational credibility determination. *State v. Rickmon*, 2023-0766, p. 3 (La.App. 4 Cir. 2/18/25), 409 So.3d 284, 288. Thus, we find there was sufficient evidence to support the jury's verdicts. Accordingly, we find no merit to this assignment of error.

### *Motion to Continue- Assignment of Error Number One*

Defendant contends that the district court erred in denying Defendant's motion to continue which prejudiced him such that he was denied effective assistance of counsel.

In open court on March 12, 2022, both the State and defense counsel acknowledged and confirmed that trial in this case was set for June 21, 2022. The district court noted that this date "was a special setting" to accommodate out of

15

town witnesses. On June 13, 2022, counsel for Defendant filed a motion to continue the trial, citing a conflicting trial date in West Baton Rouge Parish. The State filed an opposition to the motion to continue the same day, arguing that it had out-of-town witnesses scheduled to appear for the June 21, 2022 trial date. The State also noted that defense counsel had set the West Baton Rouge Parish trial on April 18, 2022, and had also set a trial for June 21, 2022, in Jefferson Parish on April 29, 2022, after the trial date was set in this case.

On June 14, 2022, both parties were instructed, by email, from court personnel to be present in court (or by Zoom) on June 21, 2022, to argue the motion to continue. On the morning of the scheduled trial, defense counsel failed to appear in court; instead, another attorney appeared on his behalf. The district court denied the motion to continue and called for the jury. The district court noted on the record that the June 21, 2022 date was one that defense counsel and the State mutually selected. Court was recessed and defense counsel arrived during the recess. Defense counsel stated that he was now available but not ready for trial because he had prepared for the West Baton Rouge trial. The district court rejected this argument and proceeded to trial. Defense counsel participated in the entire trial.

La. C.Cr.P. art 707 provides that,

> A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
>
> Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.

16

"A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor." La. C.Cr.P. art. 712. "[A district court] has the duty to require that criminal proceedings shall be conducted . . . in an orderly and expeditious manner and to so control the proceedings that justice is done." La. C Cr.P. art. 17. "[T]he district court has 'considerable discretion in ruling on a motion for continuance, and' an appellate court 'will not disturb the [district] court's ruling absent a clear abuse of that discretion.'" *State v. Melendez*, 2024-0034, p. 7 (La.App. 4 Cir. 1/23/24), 382 So.3d 418, 424 (citation omitted). "Whether refusal to grant a continuance was justified depends primarily on the circumstances of the particular case." *State v. Turner*, 2019-0777, p. 18 (La.App. 4 Cir. 5/27/20), 301 So.3d 545, 555 (citation omitted).

The district court explained that although the motion was filed timely, it nonetheless possessed the discretion to grant or deny the motion. Further, the district court noted that there were witnesses who traveled from out of state and that this case was given a preferential setting. The record establishes that defense counsel was aware of the June 21, 2022 trial date at least three months earlier. Furthermore, defense counsel had selected that date with the State. Given the circumstances: that defense counsel was aware of the trial date; the availability of out-of-state witnesses; and that the "special" accommodating date was agreed to by both parties, we find the district court did not abuse its discretion in denying the motion to continue. Accordingly, we find no merit in this assignment of error.

### Ineffective Assistance of Counsel- Assignment of Error Number Two

Defendant contends that his Sixth Amendment right to effective assistance of counsel was violated because defense counsel was unprepared for trial. Defendant argues that defense counsel was not adequately prepared for trial

because he had spent the weekend preparing for another trial in West Baton Rouge Parish. He also argues that the denial of his motion to continue resulted in ineffective representation. Defendant cites to *United States v. Cronic*, arguing that prejudice may be presumed if conditions render the situation unlikely that "counsel could have performed as an effective adversary," thus rendering the trial unfair. 466 U.S. 648, 660, 104 S.Ct. 2039, 2048, 80 L.Ed.2d 657 (1984).

This court declines to consider Defendant's second assignment of error in this appeal, reserving Defendant's right to raise the issue of ineffective assistance of counsel in an application for post-conviction relief. "As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post-conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted." *State v. Howard*, 1998-0064, p. 15 (La. 4/23/99), 751 So.2d 783, 802.

## Decree

After consideration of the record before this Court, and the applicable law, we affirm Defendant's sentences and convictions.

**SENTENCES AND CONVICTIONS AFFIRMED**